1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   CHUTIMA UTHES SUTTON,              )   Case No. ED CV 08-1659-PJW
                                        )
11              Plaintiff,              )
                                        )   MEMORANDUM OPINION AND ORDER
12        v.                            )
                                        )
13   MICHAEL J. ASTRUE,                 )
     Commissioner of the               )
14   Social Security Administration,    )
                                        )
15              Defendant.              )
     _____)

16

17                              I. INTRODUCTION

18        Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), partially denying her

20   application for Disability Insurance benefits ("DIB").  Plaintiff

21   claims that the Administrative Law Judge ("ALJ") erred in: 1) finding

22   that her medical condition improved after November 16, 2005;

23   2) failing to properly consider her and her husband's testimony; and

24   3) using the "Grids" at step five.  (Joint Stip. at 3-6, 11-14, 19-

25   23.)  Because the Agency's decision that Plaintiff was not disabled

26   within the meaning of the Social Security Act during the relevant

27   period is not supported by substantial evidence, it is reversed and

28   the case is remanded for further proceedings.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on July 14, 2005, alleging that she had been unable to work since October 30, 2003, because of a right ear problem, right elbow/arm numbness, and depression. (Administrative Record ("AR") 74, 93.) The Agency denied the application initially and on reconsideration. (AR 65-69, 74-78.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 59-60, 63.) Plaintiff appeared with counsel and testified at the hearing on September 5, 2007. (AR 25-53.) On September 21, 2007, the ALJ issued his decision, finding that Plaintiff was disabled and entitled to benefits for a "closed period" from October 30, 2003 to November 16, 2005, but that, thereafter, she was not disabled. (AR 17-22.) Plaintiff appealed to the Appeals Council, which denied review. (AR 5-9.) She then commenced the instant action.

## III. DISCUSSION

1. <u>The ALJ's Finding That Medical Improvement Occurred After November 16, 2005</u>

In her first claim of error, Plaintiff contends that the ALJ's finding that her condition improved after November 16, 2005 was not supported by substantial evidence. Plaintiff points out that the ALJ's residual functional capacity determination for the closed period, i.e., that Plaintiff could perform light work but could not do work that required her to more than occasionally lift her right arm above shoulder level, was identical to the residual functional capacity determination for the period that followed. (Joint Stip. at 4.) Plaintiff argues that "it is impossible to reconcile the ALJ's decision [that Plaintiff was disabled before November 17, 2005 but not after] with these two stated residual functional capacity

2

assessments." (Joint Stip. at 5.) Plaintiff further contends that there is no medical evidence to support these findings. (Joint Stip. at 5). She also argues that the ALJ erred in finding that she had no functional limitations as a result of her mental impairment. (Joint Stip. at 4-5.) For the following reasons, the Court concludes that the ALJ's residual functional determination is not supported by substantial evidence in the record.

The governing regulations provide that the responsibility for deciding a claimant's residual functional capacity is reserved to the Agency. 20 C.F.R. § 404.927(e)(2). Nevertheless, "a [residual functional capacity assessment] that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Furthermore, though the Agency's decision must be affirmed if it is supported by substantial evidence, meaning more than a mere scintilla but less than a preponderance, it may not be affirmed where the ALJ fails to set forth a "meaningful explanation," allowing the Court to assess the validity of the ALJ's reasons for reaching the decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882, 884-85 (9th Cir. 2006).

Here, the ALJ failed to sufficiently explain his residual functional capacity findings. He found that Plaintiff's residual functional capacity for the closed period was the same as her residual functional capacity for the period that followed. The ALJ ostensibly found that in both that Plaintiff could do light work except work requiring greater than occasional lifting above shoulder level with her right arm. (AR 18, 20.) Thus, if Plaintiff was unable to work in the closed period, it stands to reason that she was unable to work in

1    the period that followed.  The ALJ's failure to explain this
2    contradiction requires remand.

3        In addition, the ALJ's residual functional capacity finding
4    differs from the residual functional capacity he used in the
5    hypothetical question to the vocational expert.  In the hypothetical,
6    the ALJ asked the vocational expert to assume that Plaintiff had
7    mental limitations, i.e., that she would be restricted to no more than
8    occasional contact with the public and that she could not perform work
9    that required her to be a "problem solver for other employees" or to
10   "make complex management-type decisions" for employees.  (AR 48.)  The
11   vocational expert concluded that such an individual could not perform
12   any of Plaintiff's past work because "much of that work requires more
13   than occasional contact with the public.  [¶]  And much of that work
14   also requires more than occasional keyboarding with the dominant
15   hand."  (AR 49.)  In other words, the vocational expert's conclusion
16   that Plaintiff could not perform her past work was expressly based on
17   two limitations that the ALJ did not include in his residual
18   functional capacity findings in his written decision, one of which
19   being, in fact, a mental limitation that was expressly rejected in
20   that determination.

21       The vocational expert also testified that the hypothetical person
22   could not perform any other work existing in the economy because
23   "[o]ther work would require . . . more than occasional contact with
24   the public, and other work would also require more than occasional
25   bilateral hand activities[.]"  (AR 49.)  Once again, these limitations
26   were not included in the ALJ's residual functional capacity
27   determination in his written decision.  Nevertheless, in finding that
28   Plaintiff could not perform her past relevant work or any other work

4

1  during the closed period, it is clear that the ALJ relied on the
2  vocational expert's testimony.  (AR 19.)

3      The ALJ also misstated the vocational expert's testimony.
4  According to the ALJ, "[t]he vocational expert [testified] that with
5  limitations including no more than frequent use [of the right arm] for
6  handling or fingering or repetitive use of the right hand for such
7  things as prolonged keyboarding, the claimant could not perform past
8  work."  (AR 18.)  This was not what the vocational expert said.  As
9  set forth above, the vocational expert testified that the hypothetical
10 person could not perform Plaintiff's past work, or any other work,
11 because such work would require "more than occasional contact with the
12 public[,]" and because it would require "more than occasional
13 keyboarding with the dominant hand."  (RT 49-50.)  The ALJ ignored
14 this restriction in reaching his ultimate decision.  (AR 18.)

15     Despite these problems, the Agency argues that any error
16 committed by the ALJ in failing to incorporate these limitations in
17 his findings was harmless because the ALJ ultimately relied on the
18 vocational expert's testimony, which took into account all of
19 Plaintiff's limitations.  (Joint Stip. at 7-8.)  To the extent that
20 the errors bear solely on the ALJ's conclusion that Plaintiff was
21 disabled during the closed period (for which, clearly, she cannot be
22 granted any additional relief), the Court agrees.  Nevertheless, the
23 Court finds that these errors, along with other problems the Court
24 identifies below, undermine the ALJ's residual functional capacity
25 determination for the period following the closed period.

26     The ALJ provided the following justifications for his finding
27 that Plaintiff's physical condition improved as of November 17, 2005:
28 1) Plaintiff was provided wrist braces after complaining of pain, but,

1   after she took off the braces and her bra, she felt relief; 2) medical

2   records from Kaiser Permanente showed that "by January and February

3   2005 no significant findings were found on physical examination"; and

4   3) an October 2005 consultative examiner diagnosed right

5   epicondylitis, but found Plaintiff capable of performing light work,

6   had grossly normal sensation, normal motor strength, normal range of

7   motion in her elbows, and no evidence of carpal tunnel syndrome.  (AR

8   20.)  As explained below, the Court concludes that these reasons do

9   not constitute substantial evidence to support the ALJ's finding that

10  Plaintiff's condition improved after November 16, 2005.

11      Plaintiff did not allege that she was disabled due to wrist pain.

12  (AR 74.)  Thus, the fact that she experienced relief from wrist pain

13  after she removed her braces is immaterial to the issue of whether her

14  condition improved after November 16, 2005.  Moreover, Plaintiff

15  explained in a written statement accompanying her DIB application that

16  she took off the wrist braces and bra in 1995.  (AR 102.)  (She gave

17  the same explanation to Dr. Hall, the medical examiner in her worker's

18  compensation action.  (AR 144.))  The ALJ failed to explain how the

19  fact that Plaintiff took off the wrist braces in 1995 and experienced

20  relief from pain at that time supported his findings that her

21  condition improved in November 2005, particularly in light of the fact

22  that he found that she was disabled from 2003 to 2005.

23      As to the January and February 2005 Kaiser Permanente Records,

24  the ALJ's findings that these records support his finding that

25  Plaintiff's condition improved nine months later is unsupportable,

26  especially in view of his determination that the same records

27  supported a finding that she was disabled until November 2005.  If the

28  ALJ believed that these records demonstrated that Plaintiff's

condition had improved, he should have ended the closed period at that time, not ten months later.

The ALJ's reliance on the October 2005 consultative medical examination also raises questions.  Though this examination revealed that Plaintiff had greater use of her right arm and elbow as of that date, supporting the ALJ's finding that her condition had materially improved, the ALJ also used the examination results to conclude that Plaintiff was disabled up to November 16, 2005.  (AR 18.)  It is unclear to what extent the ALJ accepted the October 2005 consultative opinion, and to what end.

The Court reaches a similar conclusion regarding the ALJ's findings with respect to Plaintiff's mental impairment.  In determining Plaintiff's residual functional capacity for the period after November 16, 2005, the ALJ did not find any mental limitations. Though the ALJ found that Plaintiff was diagnosed with a depressive disorder in September 2005, he noted that the examining psychiatrist, Dr. Woodard, found that Plaintiff would have only slight impairments withstanding normal stresses and pressures in the workplace; interacting with supervisors, coworkers, and the general public; maintaining concentration, persistence and pace; and performing detailed and complex tasks.  (AR 20.)  This was a mistake.  Dr. Woodard actually found that Plaintiff would have "slight to moderate" impairment in withstanding normal stresses and pressures in the workplace and in completing a normal workweek without interruption. (AR 273.)

More significantly, it is unclear from his decision how the ALJ reconciled his reliance on the vocational expert's testimony that Plaintiff could not work because she had to avoid more than occasional

1    contact with the public with his finding that she had no mental

2    limitations during the closed period, or whether he considered any

3    such mental limitations with respect to the period following the

4    closed period.   As such, the Court is not in a position to say which,

5    if any, mental limitations the ALJ considered in finding that

6    Plaintiff's condition improved after November 16, 2005.

7        In sum, the Court finds that the ALJ's decision regarding

8    Plaintiff's condition following the closed period is not supported by

9    substantial evidence.   On remand, the ALJ must reconsider the evidence

10   and make findings regarding Plaintiff's limitations that permit

11   judicial review.[1]

12        2.    The ALJ's Credibility Determination

13        In her second claim of error, Plaintiff contends that the ALJ

14   erred when he "inexplicably rejected" certain statements she made

15   regarding her symptoms.   (Joint Stip. at 11, 12.)   Plaintiff argues

16   that the ALJ failed to: 1) specify which parts of her testimony he

17   found not credible, 2) consider the factors enumerated in Social

18   Security Ruling 96-7p, and 3) provide clear and convincing reasons for

19   rejecting her testimony.   (Joint Stip. at 12-13.)   Plaintiff also

20   contends that the ALJ erred in failing to discuss her husband's

21   submission.   (Joint Stip. at 14.)   For the following reasons, the

22   Court agrees.

23

24   _____

25        [1]  The Court also notes that the ALJ made no explicit findings
26   regarding the requirements of Plaintiff's past work before concluding
     that she would be able to do that work.   He did not ask the vocational
27   expert to describe the requirements of the past work, nor did he
     attempt in his decision to show how Plaintiff's residual functional
28   capacity would permit her to perform that work.

ALJ's are tasked with judging the credibility of witnesses. Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques as well as the claimant's daily activities. *Id*. at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In a July 25, 2005 daily activities questionnaire, Plaintiff wrote that she could not continue working because she had to answer the telephone at least 100 times a day. (AR 103.) Plaintiff also complained that her right ear was ringing and in pain and that she experienced stress, fatigue, dizziness, sleeplessness, and shortness of breath. (AR 103.) Plaintiff claimed that her right elbow hurt and her fingertips were numb, which required that she use a pen to type, one key at a time. (AR 103.)

At the September 2007 hearing, Plaintiff testified that, when she used her right arm a lot, it grew numb between her fingers and right elbow, causing her to lose strength. (AR 36.) She testified that she used a pen to type to avoid this problem. (AR 36.) Plaintiff claimed that repeatedly lifting the telephone to answer it aggravated her elbow pain, but that she could not use headphones because of pain in her right ear. (AR 37.) She explained that she was required to use the phone and type "all day long, eight hours a day" at her previous

1   job.  (AR 37-38.)  Plaintiff also testified that she had calmed down
2   since she had not been working, but that she still cried every day.
3   (AR 38.)

4        In his decision, the ALJ found that Plaintiff's statements
5   concerning the limiting effects of her symptoms were not credible
6   based, in part, on the fact that Dr. Hall, a medical examiner in
7   Plaintiff's worker's compensation case, found that Plaintiff "may well
8   have a tendency to somatize and that [she] has exaggerated her
9   symptoms for effect."  (AR 18.)  The ALJ also found that Plaintiff's
10  testimony was exaggerated in that she claimed that she was depressed
11  but did not use antidepressant medication or therapy, and because she
12  "enjoys golfing as a recreational activity and recently traveled to
13  Thailand."  (RT 18.)

14       Thereafter, the ALJ set out the requirements of 20 C.F.R.
15  § 404.1527 and the social security rulings, which contain the
16  framework for addressing credibility issues.  But, the ALJ did not
17  explain how the facts of this case when analyzed under that framework
18  established that Plaintiff was not credible.  (AR 20-21.)

19       Despite these failures, as discussed above, the ALJ's reliance on
20  the vocational expert's testimony in concluding that Plaintiff was
21  disabled during the closed period means that the ALJ must have
22  accepted that Plaintiff was limited in her ability to use a keyboard
23  and in her ability to interact with the public, solve problems for
24  colleagues, and make complex decisions.  Thus, for example, if the ALJ
25  had agreed with Dr. Hall's opinion that Plaintiff had a tendency to
26  somatize and had exaggerated her symptoms for effect, the ALJ would
27  have either found that Plaintiff was malingering or not accepted the
28  limitations that she testified to.

1    Once again, because the residual functional capacity
2 determination is unclear, it is difficult to understand to what extent
3 the ALJ might have actually accepted Plaintiff's testimony, at least
4 in part; to what extent the ALJ relied on Dr. Hall's opinion to reject
5 Plaintiff's testimony; and, moreover, given that he made no additional
6 findings for the period following the closed period, to what extent
7 the ALJ's credibility findings differed between the closed period of
8 disability and the period that followed.  On remand, the ALJ should
9 make clear credibility findings and, if he finds that Plaintiff's
10 testimony is not credible, he should set forth his reasons for this
11 finding.[2]

12    The Court also agrees with Plaintiff that the ALJ erred in
13 failing to address Plaintiff's husband's written submission regarding
14 Plaintiff's limitations in lifting, understanding, and concentrating.
15 (AR 106-13.)  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,
16 1053 (9th Cir. 2006) (stating that "an ALJ must consider lay witness
17 testimony concerning a claimant's ability to work," and remanding for
18 the ALJ to address it); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th
19 Cir. 1993) (holding that ALJ must give germane reasons to discount
20 written testimony and affidavits of lay witnesses).  Further, the
21 Court cannot conclude that the error was harmless.  *Stout*, 454 F.3d at
22 1056 ("[W]e hold that where the ALJ's error lies in a failure to

23

24    [2] Because it is not clear whether the ALJ's credibility findings
25 apply, the Court does not decide whether they were sufficiently clear
and convincing.  Nevertheless, the Court questions whether the ALJ
26 properly relied on Plaintiff's failure to use antidepressant
medication, in light of her repeated testimony that she was allergic
27 to the medication.  (AR 41-42, 44.)  Additionally, on remand, if
necessary, the ALJ should explain how Plaintiff's ability to travel to
28 Thailand undermines her testimony that her right arm causes her pain.

properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Though it is a close call because Plaintiff's husband does not offer much to establish that Plaintiff is incapable of working, the Court finds that there is enough there, particularly in the last three pages of the husband's report, to conclude that a reasonable ALJ might have found that Plaintiff was disabled. (AR 111-13.) On remand, the ALJ should address this testimony.

3.   Application Of Medical-Vocational Rule No. 202.08

In her third claim of error, Plaintiff contends that the ALJ erred when he used the wrong Grid rule (Rule No. 202.08 instead of 202.06). (Joint Stip. at 19-23.) There is no merit to this claim.

Grid Rule No. 202.08 directs a finding of "not disabled" for an individual of advanced age, i.e., 55 or over, with at least a high school degree that "provides for direct entry into skilled work," who is limited to light work, but who has no transferable skills. *See* 20 C.F.R. Pt. 404, Subpt. P, Table No. 2, Rule No. 202.08. Plaintiff argues that the ALJ should not have relied here on this rule because she obtained a college degree in Thailand over thirty years ago, and there is no evidence that her education will allow her direct entry into skilled work. (Joint Stip. at 19-20.) Rather, Plaintiff contends, the ALJ should have used Grid Rule No. 202.06, which applies to an individual whose education "does not provide for direct entry into skilled work," and which directs a finding of disabled. (Joint Stip. at 19-20.) Whatever merit in general Plaintiff's argument might have with respect to the proper application of the Grid rules, it does

12

1   not require remand in this case because the ALJ's decision was not
2   based on the rules.

3        The ALJ invoked the Grids as a framework for decision-making in
4   determining whether Plaintiff was disabled between October 30, 2003
5   and November 16, 2005.  (AR 19.)  The ALJ then noted, however, that
6   Plaintiff was not able to perform a full range of light work owing to
7   additional limitations and, therefore, relied on the vocational
8   expert's testimony, not the Grids, to conclude that Plaintiff was
9   disabled.  (AR 19.)  Thus, any error that the ALJ committed by
10  discussing the applicability (or inapplicability) of the Grids for the
11  closed period could not have prejudiced Plaintiff because the ALJ's
12  decision was not dependent on them and, further, because he found that
13  Plaintiff was disabled.  *See Booz v. Sec'y of Health & Human Servs.*,
14  734 F.2d 1378, 1379-80 (9th Cir. 1984) (holding any error by ALJ in
15  applying the Grids was harmless because the exercise was
16  "unnecessary").

17       As for the ALJ's determination that Plaintiff was not disabled
18  after November 16, 2005, this finding, too, was not based on the
19  Grids.  The ALJ found at step four of the sequential disability
20  analysis that Plaintiff could do her past relevant work as a
21  disability insurance program representative and an employment program
22  representative.  (AR 21-22.)  Thus, any discussion of the Grids
23  regarding the post-disability period was not error, either.  *See*,
24  *e.g.*, *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (holding that
25  ALJ did not err in failing to call vocational expert at step five
26  after determining at step four that claimant could perform past
27  relevant work).

28

IV. CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this memorandum opinion and order.

IT IS SO ORDERED.

DATED: February 25, 2010.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\Sutton\Memo_Opinion.wpd

14